JOHN R. TRUE, Treasurer,

*v.*

GEORGE R. DAVIS, Treasurer.

*Filed at Ottawa October 29, 1889.*

1. MUNICIPAL CORPORATIONS — *annexation — corporate indebtedness.* The prohibition of section 11, article 9, of the constitution, limiting municipal indebtedness, does not prohibit the annexation of two or more cities, incorporated towns or villages to each other, in the manner provided by the act of 1889.

2. The constitution contains no restriction as to the organization of cities, towns and villages, or the changing and amending or repeal of their charters, and consequently no restriction in respect to uniting or dividing cities, towns and villages, save only that it can not be by local or special law, but must be by general law.

3. In the absence of constitutional restriction, the legislature may provide for the organizing, uniting, dividing or annulling of such corporations, in such manner as it shall deem best to promote the public welfare.

4. By the annexation of two or more cities into one, the indebtedness of neither of the municipalities is increased. The body resulting from such annexation will have the same property and owe the same debts which were owned and owed by the several bodies before the annexation. There will be no increase of the corporate indebtedness.

APPEAL from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

This was a petition for *mandamus*, in the circuit court of Cook county. The petition is as follows:

"Your petitioner, John R. True, treasurer of the city of Lake View, in the county of Cook, in the State of Illinois, respectfully showeth unto your Honors, that at a municipal election held in the town of Lake View on the 5th day of April, A. D. 1887, there was duly submitted to the electors of said town the question whether said town should become incorporated as a city, under and pursuant to the terms and provisions of

an act of the General Assembly of the State of Illinois, entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872, and in force July 1, 1872; that a majority of the votes cast at said election were for city organization under general law; that thereupon said city of Lake View became, and from thenceforth hitherto has been, organized as a city, under the aforesaid act.

"Your petitioner further showeth unto your Honors, that at the municipal election held in and for said city of Lake View on the 2d day of April, A. D. 1889, he was duly elected treasurer thereof, for the two years thence next ensuing; that thereupon he duly qualified as such treasurer, and entered upon the duties of said office, and from thenceforth hitherto hath continued in the enjoyment of said office and the performance of the duties thereunto appertaining; that among the rights and duties of his aforesaid office is the right to have and receive from the treasurer and *ex officio* collector of Cook county the taxes and special assessments levied and assessed by the authority of said city of Lake View, and collected by said treasurer and *ex officio* collector.

"Your petitioner further showeth unto your Honors, that one George R. Davis is the treasurer and *ex officio* collector of said Cook county, and that the taxes and special assessments levied by authority of said city of Lake View, and returned by the township and city collector to said George R. Davis, treasurer and *ex officio* collector, as delinquent, pursuant to law, are now, and have been since, to-wit, May 1, 1889, in process of collection by said George R. Davis.

"Your petitioner further showeth unto your Honors, that said Davis, previous to June 29, 1889, recognized your petitioner as treasurer of said city of Lake View, and paid over to him, as such treasurer, the collections made by said Davis on account of said city of Lake View, but that since said 29th day of June, although repeatedly requested and demanded by your petitioner to pay over to your petitioner the collections made

for and on behalf of said city of Lake View, said Davis has absolutely refused, and still doth refuse, so to do.

"Your petitioner further showeth unto your Honors, that on the 19th day of July, 1889, the said George R. Davis, treasurer and *ex officio* collector, as aforesaid, had collected and had in his possession, to-wit, upwards of $30,000, received and collected by him on account of and for said city of Lake View; that thereupon, your petitioner made and delivered to said Davis a written demand for the moneys in his hands belonging to said city of Lake View, in the words and figures following:

" '*To George R. Davis, Esq., Treasurer and ex officio Collector of Cook county, Illinois :*

" '*You will please take notice that I hereby demand that you at once pay over to me, as treasurer of the city of Lake View, in the county of Cook, in said State of Illinois, all moneys, funds and revenue heretofore received and collected by you as treasurer and *ex officio* collector of Cook county, as aforesaid, for and on behalf or for account of said city of Lake View, and not heretofore accounted for by you to me or to said city of Lake View; and also, that from time to time hereafter, you pay over to me, as such treasurer of said city of Lake View, all other moneys, funds and revenue hereafter received and collected by you, as such treasurer and *ex officio* collector of Cook county, for or on behalf or for account of said city of Lake View. *July 18, 1889.*          JOHN R. TRUE,

*Treasurer of City of Lake View, Cook Co., Ill.*'

"But the said George R. Davis, treasurer and *ex officio* collector of Cook county, then and there absolutely refused and declined, and still refuses and declines, to comply with your petitioner's aforesaid reasonable and legal demand, and assigned as his only reason for said refusal to comply with your petitioner's demand, that by reason of a certain election held in said city of Lake View, and in the city of Chicago, in said county of Cook, on the said 29th day of June, A. D. 1889, for

the annexation of the city of Lake View to the city of Chicago, (all of which is hereinafter more particularly set forth and de-described,) the city of Lake View had been annexed to and become a portion of said city of Chicago, and that said city of Lake View had ceased to exist as a separate and independent municipal corporation, and that your petitioner had ceased to be treasurer of said city of Lake View, and that said Davis could not legally and safely pay over to your petitioner the funds and moneys in his hands collected for and on behalf of said city of Lake View.

"Your petitioner further showeth unto your Honors, that in fact the said city of Lake View was not annexed to said city of Chicago by virtue of said pretended election, but on the contrary, that said annexation or pretended annexation of said city of Lake View to the city of Chicago was in contravention of the constitution of the State of Illinois, and is without any legal force and effect whatever.

"Your petitioner further showeth unto your Honors, that at said pretended election for the annexation of the city of Lake View to the city of Chicago, a majority of the legal voters of each of the said cities did not vote for annexation, and that therefore said proposition for annexation was defeated, notwithstanding which, the board of election commissioners, upon the canvass of the votes cast in each of said cities, declared said proposition carried, and so certified the fact, in the form provided by law.

"Your petitioner further showeth unto your Honors, that upon the 29th day of June, 1889, a special election was held in the city of Chicago, in the city of Lake View, in the villages of Hyde Park and Jefferson, and in the town of Lake, in said county of Cook, for the annexation of the whole of said city of Lake View and the villages of Hyde Park, Jefferson, and the town of Lake, to said city of Chicago, and also for the annexation of the east half of sections four (4) and nine (9), township thirty-nine (39) north,. range thirteen (13), east of the third

principal meridian, in the town of Cicero, to said city of Chicago, under the provisions of an act of the General Assembly of the State of Illinois, entitled 'An act to provide for the annexation of cities, incorporated towns and villages, or parts of the same, to cities, incorporated towns and villages,' approved and in force April 25, 1889.

"Your petitioner further showeth unto your Honors, that at the municipal election held in the city of Lake View on the 2d day of April, A. D. 1889, there were 6770 legal registered voters entitled to vote at said election, and that at the same election held on the same day in the city of Chicago, there were 130,498 registered legal voters entitled to vote at said election; that the same registration was used at said special election upon June 29, 1889, and that the legal voters in each of said cities, instead of having decreased in each or either of said cities between said 2d day of April and said 29th day of June, 1889, had in fact increased in number in each of said cities; that at said special election held as aforesaid, 2503 votes were cast in said city of Lake View in favor of annexation, and 1999 against annexation of said city of Lake View to said city of Chicago, and that the vote for annexation cast in said city of Lake View was at least 883 less than a majority of the voters in said city of Lake View; that in the city of Chicago 15,148 votes were cast in favor of annexation of said city of Lake View to the city of Chicago, and 349 votes against such annexation; that the vote for annexation of Lake View to Chicago, cast in said city of Chicago, was at least 50,102 less than a majority of the legal voters in said city of Chicago.

"Your petitioner further showeth unto your Honors, that the board of election commissioners of said city of Chicago having canvassed the aforesaid votes cast upon said proposition in said cities of Lake View and Chicago, and also in said villages of Hyde Park, Jefferson, Cicero, and town of Lake, upon the 15th day of July, 1889, declared and certified that said city of Lake View, and villages of Hyde Park, Jefferson, and said

town of Lake, had voted to become and were annexed to said city of Chicago, and that the east half of sections four (4) and nine (9), township thirty-nine (39) north, range thirteen (13), east of the third principal meridian, in said town of Cicero, had voted to become and was annexed to said city of Chicago.

"And your petitioner further showeth unto your Honors, that said special election of June 29, 1889, and the declaration of the result thereof, were the election and annexation proceedings referred to by said George R. Davis when he declined and refused to longer recognize your petitioner as treasurer of the city of Lake View, and to pay to him, as such treasurer, the collections made by said Davis for said city of Lake View.

"Your petitioner further showeth unto your Honors, that the board of commissioners of Cook county, in accordance with and pursuant to the terms of section 21 of said Annexation act, did, on the 29th day of April, 1889, by resolutions of said board, annex or attempt to annex to said city of Chicago another part and portion of the territory of said town of Cicero, viz.: Sections three (3), ten (10), fifteen (15), and the east three-fourths ($\frac{3}{4}$) of sections twenty-two (22), twenty-seven (27) and thirty-four (34), and that portion of sections thirty-five (35) and thirty-six (36) lying south-easterly of the center line of the Illinois and Michigan canal, all in township thirty-nine (39) north, range thirteen (13), east of the third principal meridian; and also, at the same time and in the same manner, annexed or attempted to annex to said city of Chicago section twenty-five (25), township forty (40) north, range thirteen (13), east of the third principal meridian, which then was and previous thereto had been a part of the territory of the village of Jefferson.

"Your petitioner further showeth unto your Honors, that the value of the taxable property ascertained by the equalized assessment for 1888 for State and county taxes, being the last assessment for State and county taxes previous to the 29th day of June, 1889, upon which day said city of Chicago voted to

and attempted to incur and assume the indebtedness herein-after set forth, the bonded indebtedness, and the rate per cent of said bonded indebtedness to said assessed valuation, of the cities of Chicago and Lake View, the villages of Hyde Park and Jefferson, the town of Lake, and that part of the town of Cicero annexed or attempted to be annexed to the city of Chicago, as aforesaid, are set forth in the following schedule:

| MUNICIPALITY. | Assessed valuation. | Indebtedness. | Rate per ct. of indebtedness to assessed valuation. |
|---|---|---|---|
| Chicago | $160,641,727 | $12,561,500 | 7 8-10 |
| Hyde Park | 13,646,431 | 434,000 | 3 7-10 |
| Lake | 11,272,609 | 400,000 | 3 5-10 |
| Jefferson | 1,772,972 | none. | none. |
| Lake View | 3,973,205 | 148,000 | 3 7-10 |
| Cicero | 1,051,236 | 30,000 | 2 8-10 |
| Total | $192,358,180 | $13,573,500 | |

"Your petitioner further showeth unto your Honors, that there are wholly within the limits of said territory so attempted to be annexed to the city of Chicago, thirty-one school districts, and parts of nine other school districts; that said thirty-one school districts, and the proportionate part of said nine school districts, embraced within said annexed or attempted to be annexed territory, have an aggregate bonded indebtedness of upwards of $1,000,000, in addition to the municipal indebtedness aforesaid; that the effect of said Annexation act, and of the alleged proceedings under the same, if valid, will be to compel the city of Chicago to assume and become liable for the indebtedness of said several municipalities, amounting in the aggregate to the sum of $1,012,000, and the indebtedness of the various school districts aforesaid, amounting in the whole to upwards of $2,012,000.

"Your petitioner further showeth unto your Honors, that the indebtedness of Chicago, not including the aforesaid indebtedness of Hyde Park, Lake, Jefferson, Lake View, Cicero and

the school districts aforesaid, is much above the constitutional limit of five per cent upon the last assessed valuation for State and county taxes of said city, and all of said territory attempted to be annexed thereto, or of said proposed enlarged city, and that the rate per cent of indebtedness of said enlarged city, in proportion to its last assessed valuation, will be upwards of seven and one-half per cent thereof.

"And your petitioner charges and avers, that said assumption by said city of Chicago, of the aforesaid indebtedness of said territory so claimed to have been annexed, aggregating the sum of $2,012,000, will be incurring that much additional indebtedness above the constitutional limit of five per cent.

"Your petitioner further showeth unto your Honors, that while the municipal indebtedness of the city of Lake View is now but three and seven-tenths per cent of its last assessed valuation, being one and three-tenths per cent, or upwards of $50,000, within the constitutional limit of its authorized or possible municipal indebtedness, yet if said alleged annexation proceedings are held to be valid, the municipal indebtedness imposed thereby upon the territory and people embraced within the said city of Lake View, will, without any consideration therefor, be increased, in an illegal and unconstitutional manner, to upwards of seven and one-half per cent of the last assessed valuation for State and county taxes of the property within said boundaries, or upwards of $99,330 in excess of the constitutional limit of its indebtedness.

"Your petitioner further showeth unto your Honors, that if said annexation proceedings are sustained and upheld, it will lessen and jeopardize the security, if not invalidate the bonds and securities of all the aforesaid municipalities and school districts, and especially those of the city of Lake View, and unjustly distribute the burdens of said various municipal and school indebtedness.

"Therefore, your petitioner claims and insists that said pretended annexation proceedings are wholly invalid and void,

34—133 ILL.

and prays that summons may issue to said George R. Davis, treasurer and collector of Cook county, as aforesaid, as provided by law; that a writ of *mandamus* may be issued out of this court, directed to the said George R. Davis, treasurer and *ex officio* collector of Cook county, commanding him forthwith to pay over and deliver to your petitioner all taxes and special assessments received and collected by him since the first day of May, 1889, for or on behalf of the said city of Lake View, and not heretofore paid over to your petitioner by said Davis; and for such other and further order in the premises as justice shall require.                    JOHN R. TRUE,
*Treas. of City of Lake View.*"

Following was a verification by the oath of the petitioner.

The defendant demurred, and the court sustained the demurrer, and entered judgment thereon for the defendant. This appeal is from that judgment. Errors were assigned on the ruling of the court in sustaining the demurrer.

Mr. JOHN N. JEWETT, Mr. JOHN S. COOK, and Mr. EDWARD MAHER, for the appellant.

Mr. FRANCIS ADAMS, for the appellee.

Per CURIAM: The public welfare within the territory over which the city of Chicago is now exercising municipal authority, so manifestly demands an early and final decision of the question discussed upon this record, that we proceed to give our conclusion thereon, and enter judgment in the case, without that delay that might, but for this urgency, be desirable for a careful presentation of the reasons which have led to our conclusion.

The question may be stated thus: Does the prohibition of section 11, article 9, of the constitution, prevent the annexation of two or more cities, incorporated towns or villages, to each other, in the manner provided by the provisions of the act entitled "An act to provide for the annexation of cities,

incorporated towns and villages, or parts of the same, to cities, incorporated towns and villages," approved and in force April 25, 1889, (Laws of 1889, p. 66,) when such cities, incorporated towns or villages are each indebted, and the indebtedness of one or more of them exceeds the limit named in that section? We answer, in our opinion it does not.

The language of the section, so far as material to be now stated, is: "No * * * city * * * or other municipal corporation shall be allowed to become indebted, in any manner or for any purpose, to an amount * * * in the aggregate exceeding five per centum on the value of the taxable property therein. * * * And any * * * city * * * or other municipal corporation incurring any indebtedness, as aforesaid, shall, before or at the time of doing so, provide for the collection of a direct annual tax."

It thus appears, that the duty to levy the tax is inseparable from the power to incur the debt, and so, in every case contemplated by the section, that duty must be performed by the same agency that incurs the debt,—and this can only be the corporate authorities of the municipality who are empowered by its charter to create debts for and on its behalf, and levy taxes for their payment. But where two or more municipalities are annexed to each other, pursuant to the statute, and thus form one municipality in the place and stead of the several that are thus united, it is manifest the resulting municipality does not become the owner of all the property of the several united municipalities, and bound to pay all of their debts, by virtue of any act of its municipal agencies or of those of either of the united municipalities, but by virtue, alone, of the statute, and a majority vote of the electors of each of the united municipalities, at an election held pursuant thereto.

A municipal corporation is purely of legislative creation, for local government, in places where it is presumed the public welfare will be subserved thereby. Our constitution contains

no restriction as to the organization of cities, towns and villages, or the changing and amending or repeal of their charters, and, consequently, no restriction in respect to uniting or dividing cities, towns and villages, or annulling their charters, save only that it can not be by local or special law, but must be by a general law; and it is familiar law that, in the absence of constitutional restriction, the legislature may provide for the organizing, uniting, dividing or annulling such corporations, in such manner as it shall deem best to promote the public welfare. *Morgan* v. *Beloit*, 7 Wall. 613; *Thornton* v. *Abbott*, 61 Mo. 176; *Colchester* v. *Seaber*, 3 Burr. 1866; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514.

"Persons inhabiting the place to be incorporated, and the place itself," says Dillon, "both the *persons* and the *place*, are indispensable to the constitution of a municipal corporation." 1 Dillon on Mun. Corp. (2d ed.) 396. And the debt created by a municipal corporation can, in the nature of things, be nothing more than a charge, collectible by taxation, upon the persons and property within the place included by the corporation. When, therefore, two or more municipalities are united, the resulting municipality includes the persons and the places of the several municipalities, and it has the same property and owes the same debts which they all had and owed. Not a dollar of debt is thereby added to the aggregate indebtedness chargeable against the persons and property within the boundary of the resulting municipality, and nothing is thereby withdrawn from its resources. Obviously, this may result in requiring some persons and property within parts of the municipality to pay more taxes than they would have had to pay had the corporations not been annexed to each other; but this would be so in all cases where one of the uniting municipalities is indebted more than one or more of the others, and, in the cases before cited, this objection was not taken into consideration as an element preventing the annexation of different municipalities. See, also, 1 Dillon on Mun. Corp.

(2d ed.) secs. 36, 37, and cases cited in note, and Cooley on Const. Lim. (4th ed.) 232, and cases cited in note, where the omnipotence of the legislature, in the absence of express constitutional restriction, to re-organize municipalities and re-distribute their property and burdens, so as to affect adversely different persons and property, is asserted.

There is no provision in our constitution which makes a municipal debt a specific charge or lien upon the persons or property within the municipality; nor is there any provision in that instrument which guarantees the resident within the municipality that his property shall bear the burthen of taxation only for the purpose of paying debts incurred by the municipality while that property had an existence there. It is within common observation, that large amounts of property, and, it may be, all the persons within a municipality, when a debt is contracted, cease to be there when the debt is payable. The property within a municipality when a tax is levied for its payment, can alone be made to pay it.

If, then, there is no constitutional restriction upon annexation of municipalities, and no constitutional right to exempt the property of tax-payers from burdens other than debts contracted by the municipality while the property or person was within its jurisdiction, it would seem inevitably to follow that there is no constitutional ground to object that the burden of some tax-payers will be larger in consequence of annexation than it would otherwise have been.

It may be observed, in conclusion, that perfect equality between burthens and benefits, in matters of general taxation, is matter of theory, only, and never has been, and doubtless never will be, carried out in practice. Each individual within a municipality may be presumed to be benefited, by every municipal expenditure, equal to the amount that he is taxed therefor. But, in fact, all know that this can not be true. Such expenditures often, by no possibility, can benefit some tax-payers, and sometimes such expenditures may benefit no

tax-payer; still, all the taxable property within the munici-
pality must be taxed for their payment. It seems quite as
rational to assume, here, that since these municipalities are
united, and their property and improvements belong to the
resulting corporation, the benefits to the several municipali-
ties for which their indebtedness was incurred, now results to
the benefit of every tax-payer within that municipality.

The judgment is affirmed.

*Judgment affirmed.*