# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

### THE WABASH RAILROAD COMPANY

#### *v.*

### THE PEOPLE *ex rel.* Edward O. Reed, County Collector.

*Opinion filed February 18, 1903—Rehearing denied April 10, 1903.*

1. CONTRACTS—*when contract for school house is the obligation of the district.* A contract for a school building, signed by the individual directors of the district, is the obligation of the district, where the contract recites that the board of directors is the party of the second part, that the parties "have hereunto set their hands," and it is stipulated that the contractor completed the building for the district and that it was accepted by the board.

2. TAXES—*what assessment the basis for ascertaining amount of lawful indebtedness.* The assessment to be resorted to in ascertaining the extent to which a school district may lawfully become indebted is the last preceding assessment which has been completed by the final action of the State Board of Equalization.

3. SAME—*indebtedness is valid to extent allowed by constitution.* An indebtedness created by a contract for a school building is valid to the amount within the constitutional limit, even though the directors have attempted by the contract to create an indebtedness greater than the district could lawfully incur.

4. SAME—*when levy for building purposes is valid.* A two and one-half per cent levy for building purposes is valid if amount which

such levy should raise does not exceed the amount to which the district may lawfully become indebted, even though the contract for the school building attempts to create an indebtedness beyond the constitutional limit.

5. SAME—*effect of application of money in treasury to school building.* Money in the treasury of a school district which may lawfully be applied to building a school house may be devoted to that purpose, and the district may become lawfully bound to pay any additional amount which will not cause the indebtedness of the district to exceed the constitutional limit of five per cent.

6. SAME—*mere fact that money is in treasury has no effect.* The fact that there is money in the treasury of a school district which may be applied to building a school house adds nothing to the power of the directors to make a contract for the building, where it is not shown that such money was applied to or set apart for that purpose.

APPEAL from the County Court of Livingston county; the Hon. FRED G. WHITE, Judge, presiding.

C. N. TRAVOUS, (R. S. MCILDUFF, of counsel,) for appellant.

A. C. NORTON, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

To the application of the appellee collector of Livingston county for a judgment against the property of the appellant company in school district No. 7, town 29, range 4, in said county, for a delinquent tax of two and one-half per cent, aggregating $216.45, against the property of the appellant company, levied in the year 1901 for building purposes by the said school district, the appellant company presented three grounds of objection, viz.: (1) Because the levy for building purposes in said district is in excess of the amount allowed by law; (2) because said alleged special building tax was so levied to pay an unconstitutional debt; (3) because the objector, the Wabash Railroad Company, has paid all taxes legally assessed against it by said school district. Upon a hearing the objections were overruled and judgment entered

for the full amount asked in the application of the collector, amounting, including interest and costs, to $221.07. The appellant company objected to the findings of the court, excepted to the decision and judgment rendered against it, deposited with the county collector the said sum of $221.07, and prayed and was allowed this appeal.

The appellant company contends the tax for building purposes was levied to procure funds to be paid upon an amount which the board of directors of said school district No. 7, by a written agreement dated June 28, 1901, undertook to bind the district to pay to the firm of Walker & Hall for the construction of a school house for the district; that the amount so specified to be paid for the school house, to-wit, the sum of $6485, exceeded the sum of five per cent of the assessed valuation of the taxable property of the district, and that for that reason the contract was in violation of section 12 of article 9 of the constitution of 1870, and void, and the tax to pay the same illegal and uncollectible.

The contract with Walker & Hall was produced in evidence. It is signed by Walker & Hall, J. E. Shackelton, George Whitham and B. R. Johnson. Nothing in the signatures indicates that any of the parties signing the contract were acting for or as the representatives of the district. Counsel for the appellee insists, therefore, that the contract is merely the personal obligation of the directors, as individuals, and that it created no liability against the district, and hence did not prove that the district had become indebted in the amount specified in the contract.

In the body of the contract it is recited that the parties to the contract are Walker & Hall, parties of the first part, and the board of directors of school district No. 7, etc., parties of the second part, and the final clause of the contract to which the signatures are appended recites, "the parties to these presents have hereunto set their hands," etc. The contract also specifies that the

undertaking of Walker & Hall which formed the consideration for the obligation to pay that firm said sum of $6485, is the erection and completion of a two-story brick and stone school house building. The signatures appearing to the contract are those of the individual members of the board of directors of the district. The parties to the action, in the county court, stipulated "that on the 28th day of June, 1901, the directors of said district made a contract with Walker & Hall for the erection of a school house in the said district for the agreed price of $6485, a copy of which contract is hereto attached as Exhibit 1." It appeared further in the stipulation that Walker & Hall completed the school building for the district and that the same had been accepted by the board of directors of the district. Resort may be had to the language of the instrument, and to extrinsic evidence and facts of this character, to show that the obligation was that of the school district. (*Hypes* v. *Griffin*, 89 Ill. 134; *Scanlan* v. *Keith*, 102 id. 634; see, also, *Williams* v. *Harris*, 198 id. 501.) All this proof being considered, all doubt was removed that the school district, by its directors, entered into the writing with Walker & Hall for the construction of a school building for the district, to cost $6485.

By section 12 of article 9 of the constitution of 1870 the school district was prohibited from becoming indebted, "in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness." The contract was made on the 28th day of June, 1901. The assessment for the year 1901 had not then been completed, the action of the State Board of Equalization on the assessments for 1901 not having been then taken. The State Board of Equalization did not convene for the purpose of considering and equalizing the assessment for the year 1901 until the second Tues-

day in the month of August, 1901. The assessment to be resorted to in ascertaining the extent to which the district might become indebted on the said 28th day of June, 1901, was that of the year 1900. (*Culbertson* v. *City of Fulton*, 127 Ill. 30; *Lussem* v. *Sanitary District*, 192 id. 404.) The total assessment for the year 1900 was shown to have been $48,707. The school district could not, on said 28th day of June, 1901, lawfully incur an indebtedness exceeding five per cent of that amount, viz., $2435.35. The assessment for the year 1901 was not completed until after final action had been taken by the State Board of Equalization at its meeting which convened on the second Tuesday in the month of August, 1901. The contract with Walker & Hall was executed on the 28th day of June, 1901, being prior to the meeting of the State Board of Equalization. On the 5th day of August, 1901, which was also prior to the meeting of the State Board of Equalization for the year 1901, the board of directors of said school district certified the levy here involved to the county clerk of said Livingston county, and under such certificate the levy was extended against the property assessed for taxation in the district, including that of the appellant company. The indebtedness created by the contract with Walker & Hall, if any was created, must be regarded as having been incurred at the date of the contract, to-wit, June 28, 1901. This contract purported to create an indebtedness of $6485 for the school house, while, as we have seen, the school district could not then lawfully contract an indebtedness in an amount exceeding $2435.35. In that sum, however, the board of directors might bind the school district, and a tax levied to pay that amount could not be defeated on the ground the directors also endeavored, by their contract, to create an indebtedness in a larger sum against the school district than the district had power to incur. (*Culbertson* v. *City of Fulton, supra; Lussem* v. *Sanitary District, supra.*) The rule with reference to contracts of this character is,

that the indebtedness is valid to the amount within the constitutional limit. *Culbertson* v. *City of Fulton, supra.*

Aside from all other questions argued by counsel and hereinafter touched upon, it is clear, we think, that the school district, on August 5, 1901, had the power to certify a levy for an amount not exceeding $2435.35, to procure funds in not exceeding that amount to be paid on the contract with Walker & Hall for the school house, for to that extent the contract was valid and might lawfully be paid. The levy of two and one-half per cent certified by the directors on August 5, 1901, to be extended on the taxable property in the district as assessed for taxation by the final action of the board of equalization for the year 1901, (which was in the sum of $57,788, being larger than the valuation as fixed for the year 1900,) would produce but $1444.70,—an amount less than that in which the district had lawful power to become indebted. The levy was, therefore, authorized by law, and was properly extended against the property of the appellant company in the school district.

The other questions argued by counsel, not hereinbefore referred to, are two in number: First, that insisted upon by the appellee, that as it appeared from the facts stipulated to be true that the school district, when the contract for the erection of the school house was entered into, had in its treasury the sum of $2517.13 to the credit of the district for building purposes, it should be held the district could lawfully contract an indebtedness in the amount so in its treasury, in addition to an amount equal to five per cent of the assessed valuation of all the taxable property of the district. The school house was completed under the contract and accepted by the directors, but it does not appear from the record whether the contract price thereof has been paid or not, or that the sum of money so in the treasury was applied, in whole or in part, to the payment of the amount contracted to be paid for the school building. Nor does it appear that

the school directors, by any order entered by them, appropriated or set apart the sum of money so in the hands of their treasurer to the payment, in part, of the amount specified in the contract to be paid for the school house. Had the directors contracted to pay, and paid, the sum of money in the treasury to the contractors in part payment of the amount specified to be paid for the school house, the effect of the contract, if otherwise valid, would have been to incur an indebtedness in the sum which would remain to be paid under the contract, or had the directors taken such steps as would have irrevocably fixed the application of the moneys so in the treasury to the payment, in part, of the contract price of the school house, the contract could not be construed to incur an indebtedness beyond the amount remaining to be paid for the school building. School directors having money in the treasury of their district which may lawfully be applied to the matter of building a school house may devote such money to that purpose, and the district may, in addition thereto, become lawfully bound to pay an additional sum if the indebtedness of the district is not, by the agreement to pay such additional sum, increased to an amount exceeding five per cent of the valuation of the taxable property of the district. But there is no proof on these points, and the mere fact the money was in the treasury when the contract was entered into added nothing to the power of the board of directors in making the contract. *City of Chicago* v. *McDonald,* 176 Ill. 404.

The other question is that sought to be presented by counsel for appellant. It was made to appear by the stipulation of facts entered into by the parties, that on the 19th day of October, 1901, the legal voters of the said school district, at an election then duly held in pursuance of legal notice, authorized the school directors of said district to issue the bonds of the district in the sum of $2400, whereby to provide funds for building a school house; that the bonds of the district in that sum were

issued and sold for the sum of $2435. The board of directors entered a resolution on their record declaring the result of the election on the question of issuing the bonds of the district, and also an order directing that five bonds of the district be issued in denominations of $500, except bond No. 1, which was to be in the sum of $400, and that such bonds should fall due, respectively, August 1, 1908, 1909, 1910, 1911 and 1912, and should bear interest at five per cent per annum, payable annually. This order further, as in compliance with section 12 of article 9 of the constitution of 1870, provided that an annual tax should be laid on the property of the district to pay the interest on the bonds as the same accrued, and that in the years 1907, 1908, 1909, 1910 and 1911 a tax should be levied sufficient to meet and discharge the bonds to fall due in the succeeding years, as before mentioned. The original amount of the bonds so issued and sold is equal (within $35) to the amount in which the district might lawfully become indebted, and the argument of counsel for the appellant seems to be that the issuance of the bonds in some manner rendered the levy invalid. If the levy was valid when made, we do not understand how it could be rendered illegal by the subsequent issue of the bonds of the district. The levy was not made to pay the bonds, for none of them were due, nor to provide a fund for their payment, for the order of the board of directors provided that the funds wherewith to pay the bonds as they respectively fell due should be obtained by levies to be made in subsequent years, the earliest being the year 1907. The levy here made was not for the purpose of providing a fund wherewith to pay the interest on the bonds. It was stipulated another levy had been made to procure money to pay such interest on the bonds, and that the appellant had paid the tax extended against its property under that levy. The directors, as we have seen, had lawful authority to certify the levy by virtue whereof the tax here involved was extended. The levy

being valid, no reason is perceived for declaring that it was rendered illegal and void by the action of the district in subsequently issuing and selling the bonds of the district.

No question of the validity of the bonds is presented by this record, and nothing is here decided on that point. The present holding is, that the levy of two and one-half per cent for building purposes made in 1901 is valid, and that the objections to the tax extended under that levy were properly overruled.

The judgment is affirmed.                     *Judgment affirmed.*