PEOPLE ex rel. HAIGHT v. BROWN, Village President, et al.

(Supreme Court, Appellate Division, Second Department. October 26, 1915.)

1. MUNICIPAL CORPORATIONS ⬦863—DEBT—CONSOLIDATION OF MUNICIPALITIES—BORROWING POWER—LIMITATION—STATUTE—VALIDITY.

Where the combined indebtedness of the village of White Plains and parts of the towns of Greenburgh and North Castle was in excess of 10 per cent. of the value of real estate in the new city of White Plains, into which they were incorporated by Laws 1915, c. 356, and thus in excess of the limitation upon the borrowing power of cities imposed by Const. art. 8, § 10, the act creating the new city was not invalid, as violating that constitutional provision, since it applies only to the creation of new indebtedness, and not to the mere consolidation of existing debts.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1824–1827; Dec. Dig. ⬦863.]

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MUNICIPAL CORPORATIONS ⚖⇒31—CONSOLIDATION—DEBT—INCREASE—LEG-
ISLATIVE POWER—EFFECT.

The power of the Legislature to divide, unite, or annul towns and cities for the public welfare is supreme, and not affected by the fact that in a given case an increased burden of municipal indebtedness falls upon some taxpayers.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 78, 79; Dec. Dig. ⚖⇒31.]

3. ELECTIONS ⚖⇒52—ELECTION OFFICERS—SELECTION—PROPRIETY.

A provision in Laws 1915, c. 356, creating the city of White Plains, for the election of city officials, requiring by section 25 the trustees of the village of White Plains to select "the necessary election officers," is a provision for bipartisan representation, as required by section 302 of the Election Law (Consol. Laws, c. 17), and the selection of election officers from the two parties casting the highest and next highest vote at the last general election was proper.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 46; Dec. Dig. ⚖⇒52.]

4. MUNICIPAL CORPORATIONS ⚖⇒124—NEW CITY—FUTURE OFFICIALS—ELEC-
TION—LEGISLATIVE POWER.

The Legislature, in the exercise of powers looking to the future, may constitutionally direct an election of officials for a new city, provided for by statute, but not yet in being.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 290–297; Dec. Dig. ⚖⇒124.]

Appeal from Special Term, Westchester County.

Petition for mandamus by Oscar G. Haight against John J. Brown, as President of the Village of White Plains, and others. From an order denying the writ, he appeals. Affirmed.

Argued before JENKS, P. J., and CARR, STAPLETON, MILLS, and PUTNAM, JJ.

J. H. Caldwell, of New York City (R. E. Digney, of White Plains, on the brief), for appellant.

Henry R. Barrett, of White Plains, for respondents.

PUTNAM, J. [1, 2] The present village of White Plains is partly in the town of White Plains and partly in the town of Greenburgh. Laws 1896, c. 768. Chapter 356, Laws of 1915, creates a new municipality, to be called the city of White Plains, by a merger of the present village of White Plains, including all the rest of the town of White Plains, and of the town of North Castle, in Westchester county. The village of White Plains already has a debt of exceeding 10 per cent. of its last assessed taxable valuation. The act provides (section 291) that the city of White Plains shall be liable for the bonded debt of the village and town of White Plains, and shall pay and discharge the principal as the same shall fall due, and the annual interest thereon. It also directs an apportionment of the existing indebtedness of the towns of North Castle and Greenburgh, as well as the included school districts. The part so apportioned on the united city is to become a charge for principal and interest upon the city of White Plains. Section 292. The effect of this is to start the newly formed municipality indebted in upwards of 10 per cent. of the assessed taxable valuation of the entire territory so incorporated, based on the assess-

ment rolls of 1914 or 1915. These figures are not questioned; but it is claimed that the constitutional limit is not passed, because no assessment roll has yet been made up for the new city of White Plains.

The Constitution sets a limit on the debt of counties and cities. But it prescribes no percentage limit on borrowing by towns and villages. It provides:

"No county or city shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation, as it appeared by the assessment rolls of said county or city on the last assessment for state or county taxes prior to the incurring of such indebtedness." Article 8, § 10.

A village, when it becomes a city, falls under this limitation. Whether it keeps its village boundaries or enlarges them, as in the case at bar, the new corporation will start with an excess of debt, which will prevent further borrowing until the permitted ratio of assessed valuation to municipal debts shall be restored. Appellant contends that this violates the above constitutional provision. Judge Dillon says:

"The effect of the constitutional provision is limited to those municipal transactions which create indebtedness; hence it does not prevent the annexation or consolidation of two or more cities or other municipalities, even if one of them has reached or exceeded the constitutional limit, for thereby the debt of the cities is not increased." Dillon, Mun. Corp. (5th Ed.) § 191, p. 345, citing True v. Davis, 133 Ill. 522, 22 N. E. 410, 6 L. R. A. 266.

See, also, Tiedeman on Municipal Corporations, § 55.

In True v. Davis, supra, the Supreme Court of Illinois dealt with the enlargement of Chicago in 1889 as affected by the state constitutional limit of 5 per cent. Chicago had already overrun its debt limit, and the annexation imposed a further liability for the debts of the acquired territory of over $2,000,000. As admitted by the demurrer, the indebtedness of the enlarged city of Chicago would exceed the debt limit of 5 per cent. The reasoning of the Illinois Supreme Court as to the absolute power of the Legislature to unite, divide, or annul such corporations is applicable here. In the state of New York such legislation providing for the public welfare is supreme, and as said by the Illinois court:

"If, then, there is no constitutional restriction upon annexation of municipalities, and no constitutional right to exempt the property of taxpayers from burdens other than debts contracted by the municipality while the property or person was within its jurisdiction, it would seem inevitably to follow that there is no constitutional ground to object that the burden of some taxpayers will be larger in consequence of annexation than it would otherwise have been."

This principle is unchanged when applied to the growth of a village or town into a city. Overborrowing by municipalities was looked upon as a perilous tendency of counties and cities. Smaller bodies, like towns and villages, were not put under this restriction.

Taxpayers of White Plains village, now coming into the united city, are benefited by being now protected from further debts until the legal ratio is established between municipal property and funded debt. Their present burden is not increased. Heretofore taxpayers in the parts of the towns annexed have had no protection from debts which a ma-

jority may vote. The merger brings them within the constitutional safeguard. It is a necessary result of such annexation that all taxpayers must in future stand alike, so that any burden based on city valuations and city needs has to be borne by all, regardless of their prior separate conditions of taxation. We therefore think that the present merger, though it may result in a consolidated debt of 13 per cent. of the whole present assessed valuation, under the received interpretation of this constitutional limitation, does not thereby violate the Constitution, because it incurs no new indebtedness.

[3] Nor can we sustain appellant's further objection, based on the choice of election officials. The act (section 25) directs the trustees of the Village of White Plains to appoint "the necessary election officers to hold and carry out" the election to be held on the first Tuesday of November to choose the officials of the new city, which comes into full corporate being on January 1, 1916. We think the Legislature indicated bipartisan representation, under section 302 of the Election Law, when it stated "The necessary election officers to hold and carry out" the election, and on this established principle the election officials have been chosen from the two parties having cast the highest and next highest number of votes at the last general election.

[4] The Legislature had to direct an election to be held as a preliminary to the city's complete organization. The act devolved on the trustees of the village of White Plains to choose these officials and canvassers. In the effort to be fair to the outside localities, the village trustees have designated the same persons outside of the village who had already been appointed by the town boards of the towns of White Plains and of Greenburgh. Such situations, preliminary to statutes taking full effect, necessarily require action on and under powers that look to the future. The Legislature may constitutionally direct such an election for the future office, so that officials may be chosen in advance, without having to await all the conditions necessary to perfect their official powers.

It follows that the order denying the application for mandamus should be affirmed, with $10 costs and disbursements. All concur.

