(No. 23267.—

JOSEPH KOCSIS, Appellant, *vs.* THE CHICAGO PARK DISTRICT *et al.* Appellees.

*Opinion filed November 21, 1935.*

CLYDE L. DAY, for appellant.

JAMES M. SLATTERY, JOHN L. McINERNEY, and KIRK-LAND, FLEMING, GREEN & MARTIN, (JOSEPH B. FLEMING, JOSEPH H. PLECK, and BERNHARDT FRANK, of counsel,) for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Joseph Kocsis, a qualified tax-payer of the former West Pullman Park District, filed a complaint in the circuit court of Cook county against the Chicago Park District, a municipal corporation, and its five commissioners, to test the constitutionality of an act entitled, "An act authorizing the Chicago Park District to assume and become liable for the payment of certain indebtedness of superseded park districts and to issue its bonds to re-fund and/or fund same, legalizing such indebtedness and providing for the levy and collection of taxes for the payment of such bonds." (Laws of 1935, p. 1012; Ill. State Bar Stat. 1935, p. 2383; Smith's Stat. 1935, p. 2326.) By his action the plaintiff sought to restrain the district, its commissioners and officers, from proceeding under two ordinances, one providing for the re-funding of the bonded indebtedness of the twenty-two park districts superseded by the Chicago Park District, and the other providing for the funding of the floating indebtedness of the original districts. The court sustained the validity of the statute (hereinafter referred to as the Assumption act) and the ordinances, rendered judgment in favor of the defendants and dismissed the complaint as to each of them. The plaintiff prosecutes this appeal.

The pertinent facts are as follows: By the provisions of the Chicago Park District act the Chicago Park District superseded twenty-two park districts in Cook county.

(Laws of 1933, p. 725.) Section 18 of the act provided that each of the original districts should remain liable for the payment of its bonded indebtedness. By the Assumption act, in effect on July 11, 1935, provision was made for the direct assumption of the indebtedness of the superseded districts by the successor park district, and the latter was authorized to issue its bonds to re-fund or fund it and to levy taxes upon all the taxable property within the boundaries of the Chicago Park District for the payment thereof. Conformably to the authority of the Assumption act the commissioners of the Chicago Park District on July 25, 1935, passed two ordinances accepting the provisions of the statute and authorizing the issuance of re-funding and funding bonds having a par value of $103,709,760.52 and $4,956,066, respectively. Each ordinance also provided for the levy and collection of the requisite taxes for the payment of these bonds. In particular, the ordinances provided for the payment of the principal and interest on these bonds by levying an annual tax upon all the taxable property within the Chicago Park District for the years 1935 to 1954, inclusive. The commissioners certified the ordinances to the county clerk on August 15, 1935.

Of the twenty-two former park districts nineteen were known as "small park districts" and three as "large park districts." The West Pullman and four other small park districts lay partly within and partly without the city of Chicago, although contiguous thereto. An act of the General Assembly effective July 2, 1935, disconnected the territory of the Chicago Park District lying outside of the city limits. The act provided, however, that the disconnected territory should "remain liable for its proportionate part of its bonded and unfunded indebtedness." Laws of 1935, p. 1021; Ill. State Bar Stat. 1935, p. 2374; Smith's Stat. 1935, p. 2316.

Each of the small park districts had established and maintained within its territorial limits park and recreational

facilities at the sole expense of the tax-payers thereof and designed principally for the use and benefit of the inhabitants of the particular district. The public also enjoyed the right to use these properties or facilities. The three large districts (Lincoln, West and South Park districts) had built and maintained numerous facilities, which were used as much, if not more, by the residents of the other superseded park districts than by the residents of the districts which provided and paid for them. These improvements included 175 miles of boulevards and driveways, extensive bathing beaches, the zoo and the natural history museum in Lincoln Park, the floral conservatory in the West Park District, and recreational facilities such as golf links, tennis courts, baseball lots, swimming pools and bridle paths. Since the creation of the Chicago Park District all of the twenty-two superseded park districts have been operated as a unit, with equal privileges and benefits to every person within its territorial limits, and to the general public.

When the Chicago Park District was created the indebtedness of the West Pullman Park District consisted of bonds in the principal amount of $46,000. Its assessed property valuation was $6,551,305 within the city limits and $188,663 outside of the city of Chicago, or a total of $6,739,986, representing .682 per cent of its valuation. At the time of filing the complaint and the entry of the judgment, bonds of this district having an aggregate par value of $11,000 maturing on January 1, 1933 and 1934, respectively, were in default. The accrued interest on its outstanding bonds was $6458.34 as of September 1, 1935. The assessed value of all the property in the Chicago Park District on July 11, 1935, (the day the Assumption act came into force,) was $2,399,239,413. The aggregate total of the liabilities, including those of the West Pullman Park District, to be re-funded and funded is $108,665,826.63, or less than five per cent of the assessed valuation of the

taxable property within the boundaries of the Chicago Park District.

To obtain a reversal of the judgment the plaintiff makes several contentions. Our attention is first directed to the fact that under the ordinances passed pursuant to the Assumption act, the plaintiff, a tax-payer in a portion of the Chicago Park District formerly denominated the West Pullman Park District, and which had a low ratio of indebtedness to its assessed property valuation, will be subjected to a substantial increase of tax rate to satisfy the liability for the taxes necessary to pay the indebtedness of the other superseded districts, some of which had a high ratio of indebtedness. Complaint is also made that since the electors of the superseded West Pullman Park District voted against the adoption of the Chicago Park District act, the plaintiff is subjected to the imposition of a local burden without his consent or the consent of the people of the West Pullman Park District. On the basis of the foregoing objections the plaintiff contends that the Assumption act and the two ordinances deprive him of due process of law, in violation of the State constitution, and transcend the due process of law and the equal protection of the laws provisions of the fourteenth amendment to the Federal constitution.

This court has held that the fact that fourteen small park districts, including the West Pullman Park District, voted against the adoption of the Chicago Park District act, conferred upon such districts no rights and imposed upon them no burdens not equally possessed or imposed upon each of the districts. (*People* v. *Kelly,* 357 Ill. 408.) The first contention is thus narrowed to the determination of whether the statute and the ordinances constitute discriminatory legislation and thereby contravene the constitutional guaranties invoked.

The legislature may create any conceivable kind of corporation it deems wise for the more efficient administration of public affairs and endow such corporation and its

officers with whatever powers and functions it deems necessary and proper for the administration of the corporate affairs. (*Board of Education* v. *Upham,* 357 Ill. 263; *People* v. *Bowman,* 247 id. 276; *Perkins* v. *Cook County Comrs.* 271 id. 449.) The twenty-two superseded park districts were all municipal corporations, nineteen of them being organized by petition and referendum pursuant to a general act approved June 24, 1895, and the remaining three by special acts passed in 1869. By their incorporation those corporations acquired no contract rights, and the legislature enjoyed the right at all times to regulate and control them, their franchises and their funds, and to alter, modify or abolish them at pleasure, provided their property was not diverted from the uses for which it was given or purchased. (*People* v. *Bowman, supra.*) Nor did the plaintiff have any vested rights in the property of the former West Pullman Park District or to have such corporation continue in existence. (*Rylands* v. *Clark,* 278 Ill. 39.) The creation of the Chicago Park District and the consequent dissolution of the superseded districts have been held to be a valid exercise of legislative power. (*People* v. *Kelly, supra.*) There is no contract between citizens of a particular municipality and the municipal corporation that the property within the particular territory shall not be taxed for the benefit of another municipal corporation or district to which it may be annexed, even though the tax is assessed to raise money to pay bonds or obligations voted and incurred by the municipality or district prior to the annexation. (*Adriaansen* v. *Board of Education,* 222 App. Div. 320, 226 N. Y. Supp. 145; affirmed by the Court of Appeals, 248 N. Y. 542.) When two or more municipalities are combined, the resulting municipal corporation includes the persons and places of the several municipalities, and it has the same property and owes the same debts which they all had and owed. The identity of the component elements, in such cases, is lost and becomes absorbed

into the new creation. (*True* v. *Davis*, 133 Ill. 522; *Troop* v. *Pittsburgh*, 254 Pa. 172; *State* v. *City of Miami*, 103 Fla. 54.) Where two or more municipal corporations are consolidated or the entire territory of one municipal corporation is annexed to another, unless the legislature otherwise provides, the contracts and indebtedness of the corporations which are consolidated or annexed become the contracts and indebtedness of the consolidated or annexing corporation, and the latter is vested with the power to raise revenue wherewith to pay them by levying taxes upon the real and personal property of the persons residing therein. (1 Dillon on Mun. Corp. (5th ed.) sec. 357; *Mount Pleasant* v. *Beckwith*, 100 U. S. 514.) It is clear that the General Assembly had the power, in the first instance, to provide in the Chicago Park District act for the imposition of taxes to satisfy the liabilities of the extinguished park districts.

The contention that the Assumption act and ordinances result in discrimination against the tax-payers of the former West Pullman Park District cannot be sustained. The new district has the unquestioned right to levy taxes over the entire territory within its boundaries for the maintenance of the properties and improvements acquired from the superseded districts. It necessarily follows that the district likewise has the power to provide for equalizing the debts previously created incident to the acquisition of these properties and improvements, by spreading the burden over the entire district. Absolute equality is impracticable in taxation and is not required by the due process of law and equal protection clauses. A statute affords equal protection to all persons affected when it requires that the same means and methods be employed alike to the persons composing the class affected, so that the law operates uniformly upon all persons similarly situated, both in the privileges conferred and the liabilities imposed. (*Barbier* v. *Connolly*, 113 U. S. 27; *Reif* v. *Barrett*, 355 Ill.

104.) The plaintiff, as a tax-payer of the Chicago Park District, is entitled to the benefits of all the superseded districts. The burdens incidental to the operation and maintenance of the district will fall upon tax-payers in the Chicago Park District in proportion to the valuation of their assessable property. The plaintiff is not in a position to complain that the equalization of the tax burden discriminates against the tax-payers of the original districts. He and other tax-payers similarly situated have taken or have been given the benefits of the new district and they must share the burdens. The instant case presents a situation where the legislature has seen fit to effect a more equitable apportionment of the cost of municipal improvements within the territory of a particular municipal corporation. Neither the Assumption act nor the ordinances in question deprive the plaintiff, as a property owner and a tax-payer, of property without due process of law nor deny to him the equal protection of the laws.

Complaint is made that the Assumption act contravenes the provisions of section 12 of article 9 of the constitution of this State. Section 12 declares that "no county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness." Any county, city, school district or other municipal corporation incurring such indebtedness is required, before or at the time of doing so, to provide for the collection of a direct annual tax sufficient to pay interest on the debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting same. This court has frequently stated that the object of the constitutional provision against any municipal corporation becoming indebted

in excess of five per cent of the assessed valuation of property is to protect the property of citizens from being burdened with such excess indebtedness extending into the future. Any plan or scheme which has the effect of creating such a burden is prohibited, no matter how the indebtedness is created. (*Green* v. *Hutsonville School District*, 356 Ill. 216; *Wade* v. *East Side Levee District*, 320 id. 396; *People* v. *Chicago and Alton Railroad Co.* 253 id. 191.) The assessment to be resorted to in ascertaining the extent to which a municipality may lawfully become indebted is the last preceding assessment which is complete at the time the liability is incurred. (*Wabash Railroad Co.* v. *People*, 202 Ill. 9; *Lussem* v. *Sanitary District*, 192 id. 404.) It follows that the validity of a debt is to be determined by the ratio of indebtedness to the assessed valuation in effect when the debt was created. If a debt is valid when created it will not become invalid thereafter, even if it should exceed five per cent of some future assessment. Conversely, if the debt is invalid when incurred because of the constitutional inhibition, a subsequent increase in the assessed valuation of taxable property cannot render it legal.

The plaintiff argues that since the Assumption act empowers the Chicago Park District to issue re-funding and funding bonds, notwithstanding that certain of the superseded districts were on September 1, 1935, (the date of the new bonds,) indebted beyond the limitation of indebtedness of five per cent of the assessed value of taxable property within their boundaries, it authorizes the creation of a liability for an illegal indebtedness. The inhibition of the constitution is directed solely, however, against the incurring of new debt. Since the provision is limited to those municipal transactions which create indebtedness it does not prevent the annexation or the consolidation of two or more municipal corporations, even if one or more of them has reached the constitutional limit, as there is no resultant increase of corporate debt. (1 Dillon on Mun.

Corp. (5th ed.) sec. 191; *True* v. *Davis, supra; Moore* v. *City of Pittsburgh,* 254 Pa. 185.) The issuance of refunding and funding bonds does not create additional indebtedness but merely evidences existing debts. (*County of Jasper* v. *Ballou,* 103 U. S. 745; *Powell* v. *City of Madison,* 107 Ind. 106; *Hotchkiss* v. *Marion,* 12 Mont. 218; *Hamilton County* v. *Montpelier Savings Bank and Trust Co.* 157 Fed. 19.) The Circuit Court of Appeals for the seventh circuit, in the case last cited, in referring to the constitutional provision in question, said: "The constitutional limitation relates solely to the creation of indebtedness thereafter, and neither authorizes repudiation, nor affects the making of terms for payment of existing legal liabilities. The funding of such liabilities, therefore, authorized by statute and vote, was unaffected by the limitation, and the fact alone that the issue of funding bonds thereupon exceeded that limit neither implies nor amounts to violation of the constitutional provision." It necessarily follows that no additional indebtedness will be created by the re-funding of the bonds and the funding of the floating indebtedness of the superseded park districts.

In the present case the total liabilities to be re-funded and funded by the Chicago Park District amount to $108,665,826.63 and the present outstanding indebtedness of the newly created corporation is $610,000. On July 11, 1935, (the day the Assumption act became effective,) and on September 1, 1935, the assessed valuation of all the taxable property within the district was $2,399,239,413. The 1934 assessed valuation of the taxable property within the district, filed since the trial of this cause, is $2,276,143,084, indicating a substantial reduction in the present assessment. It is manifest that the total indebtedness of the Chicago Park District following the re-funding and funding operation in controversy will be within the five per cent limitation prescribed by the constitution. The plaintiff asserts

and the record discloses that on September 1, 1935, the ratio of indebtedness of certain superseded districts to the current assessed valuation had reached or exceeded the limitation of indebtedness fixed by the constitution. This fact cannot avail the plaintiff unless the indebtedness of those districts was greater than five per cent of the applicable assessment when incurred. The parties have included in their stipulation of facts a chart showing the assessed value of all taxable property within the boundaries of each of the twenty-two superseded districts on September 1, 1935, the total amount of liabilities of those districts to be re-funded and funded, and the percentage of valuation on the day named. From this chart it appears that on September 1, 1935, the total liabilities of certain superseded districts to be re-funded and funded was more than five per cent of the assessed property value as of that day. The record fails to show when any of the liabilities to be re-funded and funded were created or whether the liabilities exceeded the constitutional prohibition when incurred. The indebtedness of the superseded districts must be presumed, therefore, to have been within the constitutional limit when originally incurred, and it may be re-funded or funded irrespective of the assessment at the time of such re-funding and funding. It is also presumed that the General Assembly was aware of the constitutional limitations of section 12 of article 9 when it enacted the Assumption act. The burden of proof was upon the plaintiff to show that the indebtedness assailed violates the constitutional limitation which he invokes. (*Troutman* v. *City of Zeigler*, 327 Ill. 251; *Moffit* v. *City of Decatur*, 322 id. 82; *Central Illinois Service Co.* v. *City of Taylorville*, 307 id. 311.) That burden has not been sustained, as proof is wanting that on September 1, 1935, any extinguished district had incurred a debt in excess of the limit prescribed by the constitution. The contention that the Assumption act, and the ordinances of the Chicago Park District enacted pursuant

thereto, contravene section 12 of article 9 of the constitution is without merit.

The creation of a single park system in 1934 resulted in the dissolution of the twenty-two park districts previously in existence. Subject to the restrictions imposed by the Chicago Park District act as amended, the new district has the power to assume the burdens and perform the duties previously imposed upon the twenty-two separate districts. Obligations which were valid when incurred remain legal. Similarly, if any obligations were invalid when incurred they necessarily remain void. If any indebtedness incurred by any superseded district was actually in excess of the constitutional restriction when incurred, the new corporation is not compelled to assume it nor would the old district be compelled to pay it. Even if the successor park district purported to assume illegal debts it could interpose objections of illegality in the same manner and with like force as the original districts, as it has succeeded to their equities. The constitutional limitation relates solely to the creation of future indebtedness and neither authorizes repudiation nor affects the making of terms for the payment of existing legal liabilities. (*Hamilton County* v. *Montpelier Savings Bank and Trust Co. supra.*) The obvious legislative intent disclosed by the Assumption act is to transfer liability, only, for existing legal debts from the original park districts to the Chicago Park District. There is no basis for the argument that the Assumption act authorizes the creation of a liability for an illegal indebtedness because certain districts now abolished had an indebtedness on September 1, 1935, in excess of five per cent of the assessed valuation of the property as of that date.

To sustain his second contention, however, the plaintiff has recourse to *Russell* v. *High School Board,* 212 Ill. 327, and *People* v. *Read,* 233 id. 351. In the case first cited this court held that the establishment by a school district under sections 41 and 42 of the School law, as amended

in 1901, of a high school under the control of a separate board of education, did not authorize the district to incur indebtedness in excess of the constitutional limit. In *People* v. *Read, supra,* the court held that where the territory of a high school district is coëxtensive with the territory of a common school district, the taxes levied by the high school board of education and the common school board must not, together, exceed the statutory limitation. In both of these cases upon which the plaintiff places reliance there was an attempt to incur additional indebtedness in excess of constitutional and statutory limitations. Manifestly, the cases cited are not parallel with the present case, which involves the re-funding and funding of existing debts and is not an attempt to increase indebtedness beyond the limits prescribed by the basic law.

The third contention of the plaintiff is that the Assumption act violates section 9 of article 9 of the constitution. This provision of the constitution provides that for all corporate purposes other than the making of local improvements by special assessment, all municipal corporations may be vested with authority to assess and collect taxes, but that such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the taxes. It is a cardinal principle that all taxation by municipal authorities must be for corporate purposes. (*Wetherell* v. *Devine,* 116 Ill. 631.) Corporate purposes for which taxes may be levied by a municipal corporation are only such as are germane to the objects of the creation of the municipality or such as have a legitimate connection with those objects and a manifest relation thereto. (*Robbins* v. *Kadyk,* 312 Ill. 290.) In particular, the creation and maintenance of parks at public expense is a proper exercise of governmental power and within the corporate purposes of municipal corporations for which the legislature may authorize the levy of taxes. *Robbins* v. *Kadyk, supra.*

To sustain his third contention the plaintiff argues that it is not a corporate purpose for one municipal corporation to assume the indebtedness of another municipal corporation. The precise question presented, however, is whether the operation of the Chicago Park District is a corporate or public purpose within the contemplation of the constitutional provision invoked. In *People* v. *Kelly, supra,* this court observed that the title of the act establishing the district was general in scope and related to the "maintenance, operation and improvement," as well as the "creation," of one large park district to supplant numerous smaller ones. It was there said: "The powers expressed in the title imply all incidental authority necessary to enable the new district to operate and make improvements. These functions carry with them the power to levy taxes, to issue bonds, and otherwise, within the provisions of the act, to generally assume the burdens and perform the duties previously imposed upon the twenty-two separate districts." The operation of the Chicago Park District is a corporate or public purpose within the meaning of section 9 of article 9, and it follows that the legislature may grant power to levy taxes for its maintenance and operation. It is true, as the plaintiff asserts, that a consequence of the abolition of the West Pullman Park District is that the tax-payers of that particular area will be assessed a higher tax rate by the new district. It does not follow that the statute authorizing the assumption by the new district of the debts of its component elements is invalid. A similar situation obtained in *True* v. *Davis, supra.* In the course of its opinion this court said: "There is no provision in our constitution which makes a municipal debt a specific charge or lien upon the persons or property within the municipality; nor is there any provision in that instrument which guarantees the resident within the municipality that his property shall bear the burthen of taxation only for the purpose of paying debts incurred by the municipality while that property had

an existence there. * * * If, then, there is no constitutional restriction upon annexation of municipalities, and no constitutional right to exempt the property of tax-payers from burdens other than debts contracted by the municipality while the property or person was within its jurisdiction, it would seem inevitably to follow that there is no constitutional ground to object that the burden of some tax-payers will be larger in consequence of annexation than it would otherwise have been. * * * It seems * * * rational to assume, here, that since these municipalities are united, and their property and improvements belong to the resulting corporation, the benefits to the several municipalities for which their indebtedness was incurred, now results to the benefit of every tax-payer within that municipality."

The fourth contention is that the Assumption act is a special act granting irrevocable privileges and immunities. To support this contention the plaintiff first invokes section 14 of article 2 of the constitution, which provides, among other things, that no law making any irrevocable grant of special privileges or immunities shall be passed. He argues that the Assumption act grants the Chicago Park District the exclusive privilege and immunity of levying taxes upon him, as a tax-payer of one superseded district, to meet the liabilities incurred by other superseded districts. It is established that the debts of a municipal corporation contracted before an annexation of territory become a burden upon the added territory as well as upon the original territory, in the absence of statutory restriction to the contrary. An analogous situation was presented for decision in the case of *Town of Cicero* v. *City of Chicago,* 182 Ill. 301. It was argued that there was injustice and inequity in a law which permitted the territory known as Austin to be ejected and put out of the town of Cicero by a vote of the whole town. The court said: "The last argument * * * is one which cannot appeal to the courts. Townships and incorporated towns are created at the pleasure of

the legislature, and they have no vested rights. The legislature has supreme power over them, and may divide or alter them or detach property from them, or even abolish them, at the legislative pleasure, subject only to the restraint of the constitution that the power shall not be exercised by local or special law, but shall be by general and uniform law."

It is true that some inequality of taxation is a natural consequence of a consolidation of municipal corporations. "Perfect equality between burthens and benefits," it has been observed, "in matters of general taxation is matter of theory, only, and never has been, and doubtless never will be, carried out in practice. Each individual within a municipality may be presumed to be benefited, by every municipal expenditure, equal to the amount that he is taxed therefor. But, in fact, all know that this cannot be true. Such expenditures, often, by no possibility, can benefit some tax-payers, and sometimes such expenditures may benefit no tax-payer; still, all the taxable property within the municipality must be taxed for their payment." *True* v. *Davis, supra.*

Reliance is also placed on section 1 of article 9 of the constitution, which requires the General Assembly to provide such revenue as may be needed by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. This section and the succeeding seven sections relate to State and county taxes—not to municipal taxes such as are involved in this litigation. Sections 9 and 10 of article 9 regulate the imposition of taxes by municipalities. *Braun* v. *City of Chicago,* 110 Ill. 186.

It is also charged that the Assumption act violates that portion of section 22 of article 4 of the constitution which prohibits the passage of any local or special law granting special or exclusive privileges, immunities or franchises to any corporation, association or individual. The word "cor-

porations," as used in section 22, means private corporations, and is not applicable to municipal corporations. (*People* v. *Rinaker,* 252 Ill. 266.) Again, this provision can not avail the plaintiff, for the amendment adopted on November 8, 1904, known as section 34 of article 4, specifically provides, among other things, that special laws may be enacted to provide for consolidating park or other local governments having jurisdiction confined to or within the city of Chicago or any part thereof. Furthermore, the subject of parks is not among those enumerated in section 22 of article 4, concerning which no local or special laws can be passed. *Board of Trustees* v. *Lincoln Park Comrs.* 282 Ill. 348; *Lincoln Park Comrs.* v. *Fahrney,* 250 id. 256.

The plaintiff insists that the Assumption act violates section 31 of the Park District act of June 24, 1895, under which the nineteen superseded small districts were incorporated. Section 31 of that statute (Ill. State Bar Stat. 1935, p. 2296; Smith's Stat. 1935, p. 2294;) prohibits districts organized thereunder from incurring an indebtedness in excess of three per cent of the total assessed value of taxable property therein without a referendum. On the day the Assumption act came into force, and also on September 1, 1935, the ratio of indebtedness of certain small park districts to the current assessed valuation had reached or exceeded the limit of three per cent indebtedness fixed by the statute. The plaintiff argues that the Assumption act, in assuming such indebtedness, is void. The record fails to show whether the indebtedness of these small park districts exceeded the statutory limit when originally incurred. It follows that the reasons set forth for rejecting the plaintiff's contention that the Assumption act violates section 12 of article 9 of the constitution answers the contention with respect to the statutory limitation invoked. The contention cannot be sustained.

The concluding argument of the plaintiff is that the Assumption act and the two ordinances ignore the Disconnecting act. By virtue of that statute taxable property of the West Pullman Park District and four other superseded park districts was detached from the new district. This property had an assessed valuation as of July 11, 1935, of $1,587,185, and the assessed valuation of all taxable property within these five districts was $91,179,121. The total outstanding bonded and floating indebtedness of these districts, including interest to September 1, 1935, was $2,295,000 and $57,333.69, respectively. We are not concerned with the wisdom of the legislature in providing that the disconnected portion of the territory should not be taxed for the improvements of the Chicago Park District, as it is expressly stipulated that there are no park improvements or facilities within the boundaries of the disconnected territory. Moreover, this question does not appear to have been raised in the trial court, nor do we find it set out in the errors relied upon for reversal.

The operation of the system of parks in the city of Chicago by the municipal corporation serves a definite, laudable public purpose. The General Assembly has decided that the cost and expense of the benefits of the park system shall be spread over the entire area and upon all tax-payers within the Chicago Park District. By providing that all tax-payers shall share the burdens occasioned by the improvements and facilities of the entire park district, the statute and the ordinances tend to correct inequalities prevailing prior to their enactment. Neither the Assumption act nor the ordinances are vulnerable to the constitutional objections interposed.

The judgment of the circuit court is right, and it is therefore affirmed. *Judgment affirmed.*