dence, and at most was a matter about which reasonable men could honestly differ, and was therefore for the jury: See Cohen v. Philadelphia & Reading R. R. Co., 211 Pa. 227; and Fortney v. Breon, 245 Pa. 47.

The assignments of error are overruled and the judgment is affirmed.

---

# Troop, Appellant, v. Pittsburgh.

*Municipalities—Cities of the second class—Consolidation—Debts —Acts of May 6, 1915, P. L. 260; P. L. 272—Construction—Validity.*

1. Under the Acts of May 6, 1915, P. L. 260 and 272, providing that the debts of cities, boroughs, townships, etc., which have been annexed to a contiguous city shall be paid by the consolidated city, debts of the constituent units which were incurred without the consent of the electors are to be reckoned as debts of the consolidated city incurred without the consent of the electors, and debts of the constituent cities which were incurred with the consent of the electors are to be reckoned as the debts of the consolidated city incurred with the consent of the electors.

2. The said Acts of 1915 although imposing additional indebtedness upon the consolidated city, are not unconstitutional so far as the City of Pittsburgh is concerned, where it appears that they do not increase the indebtedness beyond the constitutional limits either with respect to the total indebtedness of said city or with respect to the indebtedness which can be incurred by the city without the consent of the electors.

3. Said Acts of 1915 are supplemental to the legislation relating to the governments of cities of the second class; their subjects are germane to the subject expressed in the title of the original act and they do not violate Article III, Section 6, of the Constitution relating to amendments.

Argued March 27, 1916.   Appeal, No. 58, Oct. T., 1915, by plaintiff, from decree of C. P. Allegheny Co., Oct. T., 1915, No. 1927, dismissing bill in equity for an injunction, in case of Robert A. Troop v. City of Pittsburgh, a Municipal Corporation of Pennsylvania, and Joseph G.

Armstrong, Mayor, and E. S. Morrow, City Controller of said city.  Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ.  Affirmed.

Bill in equity for an injunction.

SWEARINGEN, J., filed the following opinion:

The City of Pittsburgh enacted an ordinance, authorizing the increase of its indebtedness in the sum of $90,-000.00.  A taxpayer seeks by this bill to enjoin the issue of the bonds, provision for which is made in said ordinance.  He alleges that the indebtedness of the city now exceeds two percentum of the assessed valuation.  He reaches that conclusion by adding the net debt, created with, to the net debt, created without, the assent of the electors, in all the constituent units of Greater Pittsburgh, and he does this because the Acts of May 6, 1915, P. L. 260 and 272, provide that all the indebtedness of such units shall be paid by the consolidated city.  The defendants deny that said acts require such indebtedness, as was created with the consent of the electors, to be included, when ascertaining the capacity of the city itself to increase its debts; and they aver that said acts are unconstitutional.

The case was put down upon bill and answer and was argued by counsel and submitted.

From the evidence we find the following findings of fact:

1. Robert A. Troop, the complainant, is a resident and a taxpayer of the City of Pittsburgh, and he is the owner of real estate therein.  He files this bill in his own behalf and on behalf of such other taxpayers as may join in the litigation.

The City of Pittsburgh, one of the defendants, is a municipal corporation of the Commonwealth of Pennsylvania, and under the laws thereof, is a city of the second class.  The other defendants are Joseph G. Armstrong, the mayor, and E. S. Morrow, the controller, of said city.  The mayor and controller have the power and

are charged with the duty of borrowing money on behalf of the city, within the limits prescribed by law, when they are duly authorized by the city so to do.

2. Pursuant to the provisions of the Act of Assembly approved February 7, 1906, P. L. 7, the City of Allegheny, then a city of the second class in this Commonwealth, was in the year 1907 annexed to and became part of the City of Pittsburgh.

Pursuant to the provisions of the Act of Assembly approved April 28, 1903, P. L. 332, the Boroughs of Sheraden, West Liberty, Esplen, Beechview and Montooth were, prior to the first Monday of January, 1910, annexed to and became part of the City of Pittsburgh.

3. The last preceding assessed valuation of the taxable property of said City of Pittsburgh is $771,024,310.00. Two per centum of said valuation is $15,420,486.20, which sum is the maximum limit of the city's power to incur new indebtedness, or to increase its indebtedness, without the assent of the electors thereto duly obtained at a public election held for such purpose.

4. The City of Pittsburgh, as it existed prior to the said consolidation, and the City of Allegheny and the said several boroughs, as they existed prior to said consolidation, had each incurred large amounts of indebtedness without the assent of the electors of the respective units; and the City of Pittsburgh, as enlarged by said consolidation, has incurred a large amount of indebtedness without the assent of the electors thereof. All of said indebtedness is represented by certain bonds, issued pursuant to law. A separate sinking fund for each issue of bonds, as aforesaid, has been created and is provided in pursuance of the provisions of the Constitution and acts of assembly and of the ordinances authorizing the same. From time to time the Sinking Fund Commission of said city has purchased for the credit of the several sinking funds from moneys therein, not immediately required for the extinguishment of the indebtedness they are pledged to redeem, various bonds issued by said city.

5. The said former cities and boroughs and said con-solidated city, called Greater Pittsburgh, have, hereto-fore and subsequent to January 1, 1874, incurred, with-out the assent of the electors thereof, an aggregate exist-ing bonded indebtedness, now outstanding, as follows:

| | | |
|---|---|---|
| (a) | Former City of Pittsburgh, | $5,460,300.00 |
| (b) | Former City of Allegheny, | 2,392,700.00 |
| (c) | Former annexed boroughs, | 215,250.00 |
| (d) | Greater City of Pittsburgh, | 4,064,300.00 |
| | Total, | $12,132,550.00 |

Of said bonds there are now held in the said several sink-ing funds an aggregate of $1,770,750.00, and said sev-eral sinking funds have also on hand cash, aggregating $1,893,804.02, for the redemption of said bonds. De-ducting the aggregate amount of the bonds and cash, so held in the sinking funds, from the total amount of the bonds aforesaid, there remain $8,467,995.98, as the net indebtedness of said city, created without the assent of the electors.

6. The said former City of Pittsburgh, said former City of Allegheny, and said former boroughs, prior to the aforesaid consolidation and subsequent to January 1, 1874, incurred with the assent of the respective electors thereof an aggregate existing bonded indebtedness, now outstanding, as follows:

| | | |
|---|---|---|
| (a) | Former City of Pittsburgh, | $8,800,400.00 |
| (b) | Former City of Allegheny, | 3,613,156.00 |
| (c) | Former annexed boroughs, | 244,500.00 |
| | Total, | $12,658,056.00 |

Of said bonds there are now held in said several sink-ing funds an aggregate of $3,302,356.00, and said sinking funds have also on hand cash, aggregating $870,236.94,

for the redemption of said bonds. Deducting the aggregate amount of the bonds and cash, so held in the sinking funds, from the total amount of the bonds aforesaid, there remain $8,487,463.06, as the net indebtedness of said city, created with the assent of the electors.

7. The City of Pittsburgh, subsequent to January 1, 1874, has incurred an actual existing floating indebtedness, without the assent of the electors, which, less moneys on hand applicable to the reduction thereof, aggregates $4,407,535.87.

8. An ordinance entitled "An Ordinance authorizing and directing an increase of the indebtedness of the City of Pittsburgh in the sum of ninety thousand ($90,-000.00) dollars, and providing for the issue and sale of bonds of said city in said amount, to provide funds for the construction of a refuse disposal plant, and providing for the redemption of said bonds and the payment of interest thereon," was duly enacted by the City of Pittsburgh, having been approved September 15, 1915, and the same is of record in ordinance book, vol. 27, page 102.

The indebtedness aforesaid is authorized to be incurred without the assent of the electors of said City of Pittsburgh.

9. The said Joseph G. Armstrong, Mayor, and E. S. Morrow, City Controller, of the City of Pittsburgh, purporting to act pursuant to said ordinance, are about to sell said bonds and intend to advertise for purchasers thereof.

OPINION.

The act approved February 7, 1906, P. L. 7, under which the Cities of Pittsburgh and Allegheny were consolidated, and the act approved April 28, 1903, P. L. 332, under which the various boroughs mentioned in Findings of Fact 2 were annexed to Pittsburgh, provide that each constitutent unit of the consolidated city shall pay its debt as the same existed at the time of said consolidation

or annexation. This provision for payment was changed by the last legislature. The Act of May 6, 1915, P. L. 260, which is a supplement to said Act of 1906, provides as follows:

"That all the indebtedness of each city and intervening land, united or consolidated under the provisions of the act to which this is a supplement, shall be paid by such consolidated city; and all the territory included within the limits of such consolidated city shall be liable for the payment of the floating and bonded indebtedness, and the interest thereon, of all the territory included within such consolidated city; and all taxes hereafter levied therefor by the consolidated city shall be uniform throughout the territorial limits of such consolidated city. The provisions of this act shall apply as well to cities and intervening land heretofore united and consolidated, under the provisions of the act to which this is a supplement, as well as to cities and intervening land hereafter united or consolidated under the provisions thereof."

There is a general repeating section.

The Act of May 6, 1915, P. L. 272, which is a supplement to said Act of 1903, provides as follows:

"That all indebtedness of each city, borough, township or part of a township, annexed to a contiguous city under the provisions of the act to which this is a supplement, as well as the indebtedness of the city to which the same are annexed, shall be paid by the city as enlarged by such annexation; and all territory within limits of the same shall be liable for the payment of the floating and bonded indebtedness, and the interest thereon, of all the territory included within such enlarged city; and all taxes hereafter levied therefor shall be uniform throughout the territorial limits of such enlarged city. The provisions of this act shall apply as well to territory heretofore annexed under the provisions of this act as well as to annexations taking place hereafter under the provisions thereof."

There is a general repealing section.

The complainant's proposition is that, inasmuch as by virtue of said Acts of 1915 all the debts of the constitutent units of the Greater Pittsburgh are now debts of the greater city, such as were created with the assent of the electors of said respective units must also be included in ascertaining the capacity of the greater city to incur further indebtedness. If such debts are to be so counted, then clearly the debt-incurring capacity of the city itself is largely in excess of two per centum of the assessed valuation of property. If they are not to be so counted, then the two per centum limit has not been passed. Therefore, the questions for decision are:

First. What is the effect of said Acts of 1915?

Second. Are they constitutional?

First. It is clear that, by the terms of these Acts of 1915, all the debts of the constituent units of the Greater Pittsburgh, no matter how created, are now to be paid by the consolidated city. But do these statutes change the character of such indebtedness, as the same existed prior to their passage? In answering this question, we must consider what the power of the legislature is. The Constitution of Pennsylvania prohibits municipalities from incurring debt in excess of seven per centum of the assessed valuation of property within their territorial limits. It, besides, makes a distinction between debts that may be created by such municipalities. They themselves may incur debt not to exceed two per centum of such valuation. They may incur debt beyond two per centum and not to exceed seven per centum of such valuation, but, before doing so, they must obtain the assent of the electors. Thus there are two classes of indebtedness recognized in the Constitution, one called for convenience "councilmanic," which is created without the assent of electors, and another called "electoral," which must be authorized by the electors. It is immaterial in what order these powers of a municipality are exercised: Keller v. Scranton, 202 Pa. 586.

The foregoing inhibitions of the Constitution apply to

the legislature as well as to the municipalities them-selves. It has no power to authorize a municipality to incur debt in any manner, in excess of the seven per centum limit. Neither has it any power to authorize a municipality itself to incur debt, in excess of the two per cent. limit. And, if it has no such power, it is equally impotent to require a consolidated city to assume in-debtedness of its constituent units, which would result in the councilmanic debt exceeding the two per cent. limit. Of course, the legislature may not do indirectly that which it may not do directly.

If, therefore, these Acts of 1915 mean that the electoral debts of the constituent units of such consolidated city become councilmanic debts, as the complainant contends, it appears to us that the acts offend against the Constitu-tion. The legislature would thereby be doing, under the guise of consolidation and annexation, what is expressly forbidden in the Constitution. But do these acts bear the interpretation which the complainant has placed upon them? We do not think they do. While the greater city is undoubtedly made liable for these preexisting debts of the constituent units, yet there is not a word in these statutes concerning the character of said debts— whether they are "councilmanic" or "electoral." There is no attempt made in terms to change the status of the debts. In other words, these statutes leave said pre-existing debts just as they were. They are to be regarded in the future administration of the city's affairs, just as they were before the legislation. The debt of a unit, which was councilmanic, becomes a councilmanic debt of the consolidated city, and the debt of a unit, which was electoral, becomes an electoral debt of the consolidated city; and they are to be treated accordingly. This we regard as the fair meaning of the language employed. The legislature must be presumed to have proceeded in accordance with the law. As we have seen, the Consti-tution distinguishes between councilmanic and electoral indebtedness. The status of each class of debts was fixed

as of the date of its creation, and this cannot be thereafter changed. This was one of the points for decision, as we understand, in a late case that came before the Supreme Court. It was there said:

"The first question raised......is as follows: Whether certain funding bonds consisting of two issues, one of $700,000.00 and one of $400,000.00 respectively, issued with the assent of the electors, but which were issued and the proceeds used for the payment of a floating indebtedness incurred prior to such assent, are an indebtedness incurred with or without the assent of the electors within the meaning of the Constitution. It is clear that the obligations which these bonds were intended to replace, were created without the vote of the people, and the authority afterwards granted by the people to fund this existing indebtedness which had been incurred without their consent, cannot be held to operate to transfer such indebtedness from the councilmanic class to the electoral class. The funding or refunding of a debt previously created and existing is not an increase of that indebtedness, but is merely a continuation thereof": Schuldice v. Pittsburgh, 251 Pa. 28, 31.

It follows that what the legislature meant was to transfer liability for preexisting debts from the respective units to the consolidated city, there to be treated just as they had been previously. Thereby, there was no possibility that the councilmanic debt of the greater city would exceed two per cent. of the valuation of property, because such indebtedness of each unit must have been within such limit, and therefore that of the consolidated city could not pass it. In like manner the total indebtedness of each unit must have been within the seven per cent. limit, and therefore that of the consolidated city could not pass the same. It seems to us that the only fair construction we can place upon this statute is the one above indicated. If we are correct, the indebtedness mentioned in Findings of Fact 6 cannot be counted in

ascertaining the debt-incurring capacity of the City of Pittsburgh itself.

That the legislature had power to transfer liability for the preexisting indebtedness of the constituent units of the greater city to the latter seems to be well settled by authority. Such is not an increase of indebtedness at all. It is a purely legislative question. Consolidation of municipalities and annexation of one municipality to another are not prohibited by the Constitution. The legislature may authorize such consolidation and annexation upon such terms as it may see fit to impose. It may adjust the indebtedness equitably among the units, or it may not, as in its discretion seems proper. Therefore, the argument on behalf of complainant, that a portion of Greater Pittsburgh will become responsible for "electoral debts," which were never authorized by such portion, seems unsound. By no possibility, as we have heretofore shown, will the total indebtedness of the greater city exceed the seven per cent. limit. In a recent case, considering the Act of 1906, it was said:

"When two or more cities are consolidated into one municipality, the legislature by the act authorizing the consolidation may make the consolidated city liable for the indebtedness of the old municipalities. Or it may provide for an equitable apportionment of the existing burdens by requiring each of the respective municipalities to be responsible for its own indebtedness at the time of consolidation, and by providing for the payment of such indebtedness by taxation limited to the property located within the limits of the municipality contracting the same": Penna. Co. v. Pittsburgh, 226 Pa. 322.

The School Code of May 18, 1911, P. L. 309, makes the new districts liable for the debts of those included therein, and the code was held constitutional: Minsinger v. Rau, 236 Pa. 327.

If the legislature can make such adjustments of the indebtedness in the original consolidation or annexation of municipalities, there is no sound reason why the legis-

lature cannot subsequently change the adjustment. It has been so held elsewhere: D'Esterre v. New York, et al., 104 Fed. Repr. 605.

Second. Are these acts constitutional? If we are correct in our interpretation of these Acts of 1915, we can perceive no reason why they should be held to be contrary to the Constitution. They do not increase indebtedness beyond the constitutional limit, neither do they impose indebtedness beyond the councilmanic two per cent. limit.

It is argued, however, that these Acts of 1915 are in fact amendments of the said Acts of 1903 and 1906, and that therefore the form of the legislation is contrary to Article III, Section 6 of the Constitution. We do not think that these acts are to be regarded as mere amendments. They are practically supplemental to the legislation contained in the original acts, and the subjects are undoubtedly germane to those of the original acts. The titles of the Acts of 1915 give specific notice of the contents thereof, and likewise make reference to the acts which they are intended to supplement. They are therefore self-supporting and may stand as independent enactments. We can do no better, in discussing this subject, than to quote from a decision involving the same principle:

"This brings us to the second point of the contention, which necessarily implies that a supplement to an act of assembly is no more than an amendment of the act. What is the legal acceptation of the two words, amendment and supplement? Do they mean one and the same thing, either in their ordinary and common acceptation or in the law? Ordinarily when we speak of amendment, we refer to the correction or change in some part of something fully existing or intended to have force, but rendered uncertain because of want of clearness of expression, or error of statement, or omission of something intended to be embraced therein. When we speak of a supplemental act, we intend something added to, something

new, and in legislation we mean by a supplement to an act already in force, to add to it something not contained in the original, which new and added legislation is nevertheless germane to the subject of that already in force."

In passing upon this controversy the Supreme Court said:

"The objections to the constitutionality of the Act of May 10, 1878, P. L. 51, are well answered by the learned judge below, and we are content to rest that question on his opinion, . . . . . .": Commonwealth, ex rel., v. Taylor, et al., 159 Pa. 451, 453, 456.

We are of opinion that the aforesaid Acts of 1915 are constitutional. It follows that the ordinance, described in Findings of Fact 8, is legal, that the complainant is not entitled to the relief for which he has prayed, and that the bill must be dismissed.

From the foregoing we reach the following conclusions of law:

First. Under the provisions of the Act of Assembly, approved May 6, 1915, P. L. 260, the indebtedness of the former Cities of Pittsburgh and Allegheny, which was incurred without the assent of the electors of said cities and called "councilmanic," is now councilmanic indebtedness of the consolidated City of Pittsburgh; and the indebtedness of said former cities, which was incurred with the assent of the electors thereof respectively and called "electoral," is now electoral indebtedness of the consolidated City of Pittsburgh. Under the provisions of the act of assembly, approved May 6, 1915, P. L. 272, the indebtedness of the former City of Pittsburgh and of the Boroughs of Sheraden, West Liberty, Esplen, Beechview, Elliott and Montooth, which was incurred without the assent of the electors of said municipalities and called "councilmanic," is now councilmanic indebtedness of the enlarged City of Pittsburgh; and the indebtedness of said former municipalities, which was incurred with the assent of the electors thereof respectively

and called "electoral," is now electoral indebtedness of the enlarged City of Pittsburgh.

Second. The said acts of assembly, approved May 6, 1915, P. L. 260 and 272, are constitutional.

Third. The indebtedness of the former Cities of Pittsburgh and Allegheny and of the Boroughs of Sheraden, West Liberty, Esplen, Beechview, Elliott and Montooth, which was incurred with the assent of the electors of said respective municipalities and amounting to the net sum of $8,487,463.06, (Findings of Fact 6), is not to be included in ascertaining the capacity of the consolidated and enlarged City of Pittsburgh to incur further indebtedness without the assent of the electors of said City of Pittsburgh, as it is now constituted.

Fourth. The ordinance of the City of Pittsburgh, approved September 15, 1915, and described in Findings of Fact 8, is legal and valid.

Fifth. The complainant is not entitled to the relief for which he prays and the bill should be dismissed at his costs.

The court on final hearing dismissed the bill. Plaintiff appealed.

*Error assigned* was the decree of the court.

*Lee C. Beatty,* for appellant.

*Charles K. Robinson,* with him *Charles A. O'Brien* and *B. J. Jarrett,* for appellee.

PER CURIAM, May 23, 1916:

The decree in this case is affirmed on the opinion of the learned court below directing it to be entered.

Appeal dismissed at appellant's costs.