J. B. PETERSON et al., Appellants, v. L. DALE SWAN et al., Appellees.

No. 45884.

FEBRUARY 10, 1942.

C. B. Hextell, for appellants.

Wisdom & Wisdom, for appellees.

WENNERSTRUM, J.—Plaintiffs are resident taxpayers of the former Broad Horn School District located in Warren County, Iowa. They seek to enjoin the county auditor and county treasurer of Warren County from levying and collecting any schoolhouse tax against the plaintiffs and other taxpayers in the former Broad Horn School District for the purpose of paying bonds, heretofore issued by the Truro Consolidated School District, and the interest accruing thereon. The Broad Horn School District had been consolidated with the Truro School District. The plaintiffs contended that the tax certified to and levied by the proper officers of Warren County, Iowa, on behalf of the enlarged Truro Consolidated School District, was illegal and void and that the county treasurer of Warren County, Iowa, should be enjoined from the collection of the school taxes in the former Broad Horn School District. The trial court denied the injunction and the plaintiffs have appealed.

Prior to August 30, 1938, Broad Horn School District was an independent school district in Virginia Township, Warren County, Iowa, and the Truro Consolidated School District was located in Madison County, Iowa, adjoining the Broad Horn district. On August 30, 1938, the boards of the two school districts previously mentioned, by joint resolution, changed the boundaries of the two districts under the provisions of section 4133 of the 1935 Code of Iowa and thereafter the Broad Horn district and the Truro consolidated district were included in and consolidated together as a single school corporation. There was no election or vote upon the proposition by the electors in either district. The actions of the respective boards were held valid, on appeal to this court, in the case of Peterson v. Independent School District, 227. Iowa 110, 287 N. W. 275.

On September 6, 1938, the boards of directors of the Truro Consolidated School District and of the Broad Horn School District met for the purpose of adjusting their re-

spective assets and liabilities. The Broad Horn School District board passed a resolution to transfer to the Truro Consolidated School District, which was the new district that had been formed by the consolidation of the two districts previously mentioned, all the assets belonging to the Broad Horn School District. The board of directors of the Truro Consolidated School District on this same date also adopted a motion assuming all liabilities of the Broad Horn School District in exchange for that district's assets.

The board of directors of the new Truro district on or about August 7, 1939, certified a proposed budget to the auditor of Madison County and to the auditor of Warren County, in the manner provided by law, and there has been levied a schoolhouse tax in the amount of three hundred eighty dollars ($380) and a general fund tax in the amount of twenty-three hundred sixty-two dollars ($2,362) on the property in the territory comprising the former Broad Horn School District. It is shown that at the time the present action was commenced there was a balance of approximately $1,732.50 in the treasury of the Broad Horn School District and the record further discloses that there is approximately $1,175.59 held by the county treasurer of Warren County, Iowa, to the credit of the Broad Horn School District. It is also shown that at the time this litigation was commenced the Broad Horn School District owned a one-room school building and certain library and school equipment. At the time the consolidation took place the Broad Horn School District had, outstanding, a contract with a teacher. It was stipulated in the first Peterson case, supra, that involved the consolidation of these two districts, and which stipulation was a matter of record in this case, that the new Truro Consolidated School District assumed the obligation in connection with the teacher's contract and also assumed responsibility for transporting the children to the Truro school and for furnishing necessary educational facilities to the children residing in the former Broad Horn School District pending the final determination of this litigation. These obligations, which were assumed by the new Truro Consolidated School District, have been carried out.

It is further disclosed by the record that, prior to the consolidation of the two districts, previously mentioned, the Truro Consolidated School District had voted and issued bonds in the sum of $22,000 for the improvement of its schoolhouse. It is also shown that the electors of the Broad Horn school did not participate in this election as they were not then a part of the district.

The claims of the plaintiffs appellants may be summarized as follows: (1) That the resident taxpayers of the former Broad Horn School District are not liable for the payment of the bonded indebtedness, and interest thereon, of the original Truro School District; (2) that they had no opportunity to vote on the indebtedness, that they did not vote upon the question of consolidation, and that it is illegal and void to levy a tax against the residents and taxpayers of the former Broad Horn district for the retirement of bonds and the payment of interest thereon, which bonds were issued solely by the former Truro district; (3) that the statute provides that residents of any municipality or school district shall not be called upon to pay taxes for the retirement of bonds, or interest thereon, unless the question has been submitted to the electors of the district for their determination and has been carried by 60 per cent of the qualified voters, and it is not denied that the residents and voters of the original Broad Horn School District did not participate in the election that authorized the original issuance of the bonds; (4) that the court erred in holding that the residents and taxpayers of the former Broad Horn School District were not entitled to credit as against the Truro School District for the assets which were transferred to the present Truro district; (5) that the directors of the Broad Horn School District could not transfer and give away the assets of the former district; (6) that it is proper for a taxpayer to bring an action in equity when it is claimed that the officers of a municipal corporation have acted illegally or beyond the scope of their powers; (7) that this court should modify the decree entered in the district court and exempt the property of the Broad Horn School District from any tax for the purpose of retiring bonds issued by the former Truro

School District and from the payment of any interest thereon; (8) that if the contention last noted is not decreed by the court this court should modify the decree and provide that the enlarged Truro Consolidated School District should be required to hold the cash and property of the Broad Horn School District as a separate and distinct fund; that this fund should be impounded and used only for the purpose of paying the proportionate share of the annual bond retirement and the interest on the bonds, as may be levied against the property of the former Broad Horn district, and that until this fund is exhausted no taxes should be levied against any property in the former Broad Horn district for the purpose of retiring bonds issued by the former Truro district or for paying interest thereon.

I. Plaintiffs appellants particularly call our attention to the provisions of sections 4134, 4136, 4137, 4138, and 4139 of the 1935 Code. Section 4134 provides for a settlement "when boundary lines are changed by concurrent action" of school districts. Section 4136 provides for the manner of organization "whenever any new school corporation has been established." Section 4137 relates to division of assets and distribution of liabilities of affected school districts and inasmuch as the plaintiffs appellants strenuously contend that there should be a distribution of assets in connection with the property of the Broad Horn School District the claimed statutory authority that plaintiffs appellants assert is applicable is herein set out:

"4137. Division of assets and distribution of liabilities. Within twenty days after the organization of the new boards, they shall meet jointly with the several boards of directors whose districts have been affected by the organization of the new corporation or corporations and all of said boards acting jointly shall recommend to the several boards an equitable division of the assets of the several school corporations or parts thereof and an equitable distribution of the liabilities of such school corporations or parts thereof among the new school corporations."

It is quite apparent to us that section 4137 applies to the division of assets and distribution of liabilities between re-

spective school district boards where two or more districts continue as school corporations with separate boards of directors. In the present case the Broad Horn School District was merged in its entirety with the former Truro consolidated district and our reading of the statute causes us to come to the conclusion that the provisions of sections 4137, 4138 and 4139 are not applicable to the present situation.

II. The contention of the plaintiffs appellants that the money held in the name of the former Broad Horn School District or held to their credit by the treasurer of Warren County and the property of the school district should be used for the benefit of the taxpayers of the former Broad Horn School District does not find support in the authorities to which reference will hereinafter be made. In 37 Am. Jur. 656, section 40, it is said:

" * * *. Thus, if a municipal corporation goes out of existence by being annexed to, or merged in, another corporation, and if no legislative provision is made respecting the property and liabilities of the corporation which ceases to exist, the corporation to which it is annexed, or in which it is merged, is entitled to all its property and is answerable for all its liabilities. This principle applies even if the first corporation was not lawfully organized, if it was a corporation de facto and had obtained by compliance with a general law an organization valid as against everybody except the state acting by direct proceedings. When two or more municipalities are combined, the resulting municipal corporation includes the persons and places of the several municipalities; it has the same property and owes the same debts which they all had owned and owed, and the identity of the component elements is lost and absorbed in the new creation. * * *.

"As a general rule, in the absence of statute or constitutional provision to the contrary, territory annexed to a municipal corporation is liable to pay its proportionate share of the existing indebtedness of the corporation to which it is annexed. The fact that the effect of the consolidation and the assumption of the debts of all the component corporations by the annexing corporation is to increase the tax rate as to a resident of

one of the annexed municipalities which had a low tax rate does not deprive such resident of his property without due process of law."

An Iowa case which is applicable to the situation now before us is Grout v. Illingworth, 131 Iowa 281, 283, 284, 108 N. W. 528, 529. In that case the plaintiff sought to restrain the county treasurer of Black Hawk County from enforcing payment from the plaintiff of certain school taxes certified to the county auditor and properly levied by the board of supervisors, it being contended by the plaintiff that his property was not within the limits of the school district at the time the electors of the school district voted a schoolhouse tax. It was there stated:

"The fact that the plaintiff was not a resident at the time of the annual meeting is wholly immaterial. Had his property been within the limits of the district at that time, the action of the electors would have been binding upon him, and his property would have become subject to the payment of the tax, although he himself was a nonresident and had no opportunity to participate in the electors' meeting and would not personally, as a nonresident, have enjoyed any of the benefits of the expenditure of the school tax thus voted. As to this schoolhouse tax it is immaterial when it was certified to the board of supervisors by the directors of the school district, whether prior or subsequent to the incorporation of plaintiff's property into the independent school district, for the authority of the board to levy the tax was derived from the vote of the tax at the annual meeting, and not from the certification thereof by the board of directors, provided such certification was as required by law. Now, as the electors had the power to act for the school district in directing the amount of taxes for schoolhouse fund purposes which should be levied, and did not exercise any authority as to determining the property on which it should be levied, and as the levying of the tax upon the property of the independent school district was by the action of the board of supervisors after plaintiff's property became a part of the territory of the independent school district, we think that plaintiff's property was subject to the payment of the tax. As already indicated, plaintiff's

participation or right to participate in the action of the electors of the independent school district was wholly immaterial. The electors could determine for the district the amount to be levied for schoolhouse fund, and the right of the plaintiff to participate in the proceedings was determinable on wholly independent considerations. It is too clear for argument that the right of the taxpayer to participate in the proceedings with relation to the levy of the tax on his property is only as fixed by statute. He has no such constitutional right. It is true, we have held in the case of State ex rel. v. Mayor of Des Moines, 103 Iowa [76] 90, that a board not elected by the voters of a municipal corporation cannot be given authority to levy a tax on property within the limits of the corporation; but we think that case has no bearing on the question now before us. The vote of the schoolhouse tax was by the electors of the district, and the fact that plaintiff was not one of the electors at the time the tax was voted cannot relieve his property from liability to its payment. The board of directors which certified the tax to the board of supervisors was also an elective board, although as a matter of fact plaintiff had not participated or had an opportunity to participate in its selection. The theory that the powers exercised by government rest upon the consent of the governed has never been regarded as making it essential that any particular taxpayer shall have had a personal opportunity to participate in the proceedings which shall result in the imposition of a tax or to participate in the election of the board or tribunal which shall determine the amount of the tax.''

Another Iowa case bearing upon this particular issue and particularly upon the constitutional objection that annexation of additional property was taking property without any notice and, in violation of the ''due process'' clause of the constitution, is the case of Wertz v. City of Ottumwa, 201 Iowa 947, 951, 208 N. W. 511, 513. It is therein stated:

'' * * * . The legislature had power to provide by law how municipalities shall be incorporated, and also how their boundaries may be extended. The legislature did not transcend constitutional limitations by the statute in question, in failing to

provide that the question of annexation of territory to an existing municipality must be submitted to a vote of the people interested therein. In the absence of constitutional limitations to the contrary, the legislature may by statute provide for the extension of the boundaries of a municipality without the assent of the inhabitants of either the municipality or the territory to be annexed. * * *.''

As previously noted we have held in the first case involving this new enlarged district, Peterson v. Independent School District, supra, that the procedure for the consolidation of these two school districts was proper. Inasmuch as the proceedings that were followed in the consolidation of these school districts have been held to be proper the plaintiffs appellants have no just or legal complaint that there was any violation of any statutory provisions.

A further authority that is very much in point is the case of Kocsis v. Chicago Park District, 362 Ill. 24, 31, 198 N. E. 847, 851, 103 A. L. R. 141, 147, 148. The litigation that occasioned the appeal in this last-referred-to case developed from the consolidation of the several parks in and about Chicago into one consolidated Chicago park district. It is therein stated:

''* * *. There is no contract between citizens of a particular municipality and the municipal corporation that the property within the particular territory shall not be taxed for the benefit of another municipal corporation or district to which it may be annexed, even though the tax is assessed to raise money to pay bonds or obligations voted and incurred by the municipality or district prior to the annexation. Adriaansen v. Board of Education, 222 App. Div. 320, 226 N. Y. S. 145, affirmed by the Court of Appeals, 248 N. Y. 542, 162 N. E. 517. When two or more municipalities are combined, the resulting municipal corporation includes the persons and places of the several municipalities, and it has the same property and owes the same debts which they all had and owed. The identity of the component elements, in such cases, is lost and becomes absorbed into the new creation. True v. Davis, 133 Ill. 522, 22 N. E. 410, 411, 6 L. R. A. 266; Troop v. City of Pittsburgh,

254 Pa. 172, 98 A. 1034; State v. City of Miami, 103 Fla. 54, 137 So. 261. Where two or more municipal corporations are consolidated or the entire territory of one municipal corporation is annexed to another, unless the Legislature otherwise provides, the contracts an[d] indebtedness of the corporations which are consolidated or annexed become the contracts and indebtedness of the consolidated or annexing corporation, and the latter is vested with the power to raise revenue wherewith to pay them by levying taxes upon the real and personal property of the persons residing therein. 1 Dillon on Mun. Corp. (5th Ed.) §357; Mount Pleasant v. Beckwith, 100 U. S. 514, 25 L. ed. 699. * * *.

"The plaintiff, as a taxpayer of the Chicago Park District, is entitled to the benefits of all the superseded districts. The burdens incidental to the operation and maintenance of the district will fall upon taxpayers in the Chicago Park District in proportion to the valuation of their assessable property. The plaintiff is not in a position to complain that the equalization of the tax burden discriminates against the taxpayers of the original districts. He and other taxpayers similarly situated have taken or have been given the benefits of the new district, and they must share the burdens. * * *."

By reason of the authorities previously referred to, and our conclusions in connection with the appeal here presented, it is our holding that the district court was correct in its ruling dismissing the plaintiffs' petition and in denying the injunction. It is our further holding that the claims and contentions of the plaintiffs that the provisions of the statute have not been complied with, and that there is illegality in the levying and the collecting of the taxes for the payment of the indebtedness which is now the obligation of the new and enlarged Truro consolidated district, are without merit. As stated in the case of Kocsis v. Chicago Park District, supra, the complaining taxpayers have been given the benefit of the new district and they must share the burdens.

We have given consideration to the authorities cited by counsel for plaintiffs appellants but have concluded that they

are not applicable and controlling in connection with the issues before us.

It is therefore our conclusion that the district court should be and it is affirmed.—Affirmed.

BLISS, C. J., and MILLER, OLIVER, GARFIELD, STIGER, and HALE, JJ., concur.

MITCHELL, J., dissents.